IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-574-F

| | |
|---|---|
| EDWARD MULDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| SCOTT NORTON, B.M. KIDD, T.G. | ) |
| BEASLEY and JERRY D. QUICK, in their | ) |
| individual capacities, | ) |
| | ) |
| Defendants. | ) |

Before the court is the motion of Scott Norton, B.M. Kidd, T.G. Beasley and Jerry D. Quick (collectively, "Defendants") for summary judgment pursuant to Rule 56 of Federal Rules of Civil Procedure. [DE 76]. Plaintiff Edward Mulder, proceeding *pro se*,[1] responded and Defendants replied. [DEs 82, 84]. For the reasons below, Defendants' motion is allowed.

## I. BACKGROUND

In this civil rights action under 42 U.S.C. § 1983, Plaintiff alleges that he was subjected to unconstitutionally excessive force by officers with the Sanford Police Department ("SPD") in the course of his arrest on January 6, 2011 after he led police on a high-speed chase. Defendant was later indicted and on October 15, 2012, a jury found Plaintiff guilty of numerous offenses. *See State v. Mulder*, 233 N.C. App. 82, 84-85, 755 S.E.2d 98, 99 (2014). In particular, Plaintiff was convicted of (1) one count of failure to heed light or siren, (2) one count of misdemeanor

---

[1] When Plaintiff initiated this case, he was a state prisoner. It is unclear from Plaintiff's latest return address whether he remains incarcerated.

breaking and entering, (3) two counts of violating a domestic violence protective order,[2] (4) one count of speeding, (5) one count of reckless driving to endanger, (6) one count of littering, (7) one count of failure to maintain lane control, (8) five counts of assault with a deadly weapon on a government officer, (9) one count of speeding to elude arrest with a motor vehicle, (10) one count of injury to personal property, and (11) one count of breaking or entering.[3] *See id.*

In 2013, Plaintiff initiated this case against Defendants, K.M. Rogers and J.E. Maynor in their individual and official capacities – all SPD members with the exception of Maynor, a trooper with the state highway patrol – stemming from their removal of Plaintiff from his car and his arrest on January 6, 2011.[4] Plaintiff claimed use of excessive force by Defendants and Rogers and participation in a civil conspiracy among these officials and Maynor to cover up the force used. On October 21, 2013, the court dismissed Rogers as a defendant. [DE 6]. On March 25, 2015, the court dismissed the official capacity claims against Defendants and also dismissed

---

[2] *See* N.C. Gen. Stat. § 50B-1 *et seq.*

[3] On appeal, the North Carolina Court of Appeals "arrested judgment on the speeding and reckless driving convictions and remanded [Mulder's] case for resentencing." *State v. Mulder*, 2015 N.C. App. LEXIS 158, at *2 (2015). The trial court conducted a resentencing hearing on May 7, 2014. *Id.*

[4] Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 action that challenges the validity of a plaintiff's criminal conviction or confinement is not cognizable unless the plaintiff can prove that his sentence has been reversed, expunged, declared invalid or called into question by the issuance of a writ of habeas corpus. Conversely, if success on the merits would not necessarily demonstrate the invalidity of the conviction or confinement, the § 1983 action may proceed. *Id.* at 487; *accord Boswell v. Bullock*, 2012 U.S. Dist. LEXIS 98904, at *16 (E.D.N.C. July 17, 2012) ("A person convicted of resisting arrest [ ] is not *per se* barred from bringing a § 1983 action for excessive force arising from the same interaction, as long as success on the § 1983 action does not undermine the validity of the criminal conviction.") (citing *Riddick v. Lott*, 202 F. App'x 615, 616-17 (4th Cir. 2006)). That is, *Heck* does not preclude an excessive force claim where the force is "distinct temporally or spatially from the factual basis for the person's conviction." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012).

Here, the issue is whether Defendants used excessive force after apprehending and extracting Plaintiff from his car. According to Plaintiff's version of events, following his apprehension, Defendants hit and kicked him and "us[ed] other blunt objects[] to subdue him" while he was "already . . . being restrained by three other officers." Compl. § 4 at 2 [DE 1]. This use of force is temporally distinct from the facts supporting the underlying state court convictions. *See Riddick*, 202 Fed. App'x at 616 ("The *Heck* analysis requires a close factual examination of the underlying conviction."). Accordingly, Plaintiff's excessive force claim is not barred by his state court convictions.

Maynor as a defendant. [DE 55].

## II.   SCOPE OF THE EVIDENTIARY RECORD

Before the court can summarize the facts in this case, it must determine the scope of the evidentiary record.

### A.   Defendants' Evidentiary Submissions

In support of the instant motion, Defendants submitted the following materials: (1) sworn affidavits by law enforcement officers W.J. Gardner, Scott Norton,[5] D.A. Henningsen, T.G. Beasley, B.M. Kidd, Jerry D. Quick, J.E. Maynor, and Keith Rogers – each involved with the events of January 6, 2011 [DEs 78-1, 78-3, 78-4, 78-5, 78-6, 78-7, 78-8, 78-9]; (2) the sworn affidavit of John Pridgen [DE 78-2]; (3) a sworn affidavit of John E. Combs, School Director and Chief Instructor for the Subject Control/Arrest Techniques and Physical Fitness Training Programs with the North Carolina Justice Academy, and an accompanying report stating his opinion as to the reasonableness of Defendants' actions on the evening in question and basis therefor [DE 78-10]; and (4) a one-page medical record dated January 6, 2011 from the Emergency Department of Central Carolina Hospital providing discharge instructions for Plaintiff [DE 74].

The sworn affidavits are proper summary judgment evidence. The court finds the discharge instructions are also properly considered on summary judgment. Material need not be in an admissible form at summary judgment stage. Rather, a party must identify materials that can be presented "in a form that *would be* admissible in evidence." FED. R. CIV. P. 56(c)(2) (emphasis added); *cf. Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013)

---

[5]   While Scott Norton left the police force in September 2015, *see* Norton Aff. ¶ 2, the court refers to him as "Officer Norton" for purposes of this motion.

(upholding district court's decision to exclude letter submitted by plaintiff where plaintiff "admit[ted] that he would have difficulty . . . presenting the letter or its contents 'in a form that would be admissible in evidence'") (quoting FED. R. CIV. P. 56(c)(2)).

While the medical record is not in admissible form, it <u>could be</u> admissible if it was accompanied by an affidavit from the custodian of the record to authenticate it and establish that it was kept in the course of regular business or made for the purpose of a medical diagnosis or treatment.[6] *See* FED. R. EVID. 803(4), (6). Because Plaintiff has not "object[ed] that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence," and because the court perceives no reason why this medical record could not be authenticated if Defendants were called upon to do so, the court may consider its contents undisputed for purposes of the instant motion. FED. R. CIV. P. 56(c)(2), (e)(2); *see Humphreys & Partners Architects, L.P. v. Lessard Design Inc.*, 790 F.3d 532, 539 n.4 (4th Cir. 2015) (noting the 2010 amendments eliminated the requirement that documents submitted in support of summary judgment be authenticated).

## B.  Plaintiff's Evidentiary Submissions

Defendants moved for summary judgment on all claims against them on April 7, 2016. [DE 76]. Accordingly, Plaintiff's response to the motion was due no later than May 1, 2016.[7] Local Civil Rule 7.1(e)(1) (stating "[r]esponses and accompanying documents shall be filed

---

[6]  Under Federal Rule of Evidence 901, the party seeking to properly authenticate a document "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The burden to authenticate under Rule 901 is not high. "[O]nly a prima facie showing is required" and "the proponent need only present evidence sufficient to support a finding that the matter in question is what the proponent claims." *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014).

[7]  Defendants erroneously claim Plaintiff's response was due April 28, 2016. The docket expressly states Plaintiff's response was due by May 1, 2016. *See* [DE 80] (Clerk of Court letter to Plaintiff advising of right to file a response by May 1, 2016). Of course, the court presumes all counsels' familiarity with the local and federal procedural rules hence obviating any reliance by counsel on the Clerk's letter to Plaintiff.

within 21 days after service of the motion in question"); FED. R. CIV. P. 6(d) (adding three days for service period when service is made by mailing it to the person's last known address, as done here). On April 28, 2016, in lieu of a response, Plaintiff submitted a motion for extension of time via facsimile to the Clerk of Court.[8] *See* Local Civil Rule 5.1(a)(1) ("The clerk's office will not accept any e-mail or facsimile transmission for filing unless ordered by the court.").

On May 17, 2016, the Clerk of Court received Plaintiff's mailed one-page response, which identifies as exhibits Plaintiff's sworn responses[9] to the affidavits of Officers Gardner, Norton, Henningsen, Beasley, Kidd, Quick, Maynor and Rogers and the affidavit of Pridgen. [DE 82]. These exhibits purportedly rely on and at times quote testimony from the October 2010 state trial. Some of the exhibits also include excerpts of the trial transcript. While not listed in his one-page response, Plaintiff also attached 11 photograph exhibits thereto.[10] [DE 82-10]. Eight of those exhibits purportedly depict pictures of Plaintiff's car and a patrol car at the conclusion of the high-speed chase. *See* Exs. A-F, J-K [DE 82-10]. The remaining three

---

[8] On April 29, 2016, the Clerk of Court mailed a notice to Plaintiff at his last known address, advising that it would not accept the facsimile in accordance with Local Civil Rule 5.1(a)(1). That notice was returned as undeliverable on May 12, 2016. [DE 81].

[9] *See* [DE 82-10 at 3] (indicating Plaintiff's response and exhibits attached thereto were notarized on May 11, 2016).

[10] Interestingly, while Defendants request the court's consideration of Plaintiff's <u>unauthenticated</u> discharge instructions from Central Carolina Hospital, they claim Plaintiff's exhibits "cannot be considered" because they are "*not properly authenticated*." Defs.' Reply at 2-3 (emphasis added) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.")). Defendants' reliance on *Orsi* is misplaced. As discussed *supra*, the issue is whether a party's filings identify material facts that <u>could be</u> put in admissible form. FED. R. CIV. P. 56(c)(2).

The trial transcript excerpts relied upon by Plaintiff could be reduced to admissible form. That said, the facts cited by Plaintiff challenge his underlying state court conviction and are unrelated to the force used by Defendants in taking Plaintiff into custody. The photographs also could be reduced to an admissible form at trial with appropriate authentication testimony. Similar to the trial transcripts, however, Plaintiff relies on eight of the photograph exhibits for the purpose of challenging evidence supporting the injury to personal property conviction – an issue unrelated to the instant matter. *See* Exs. A-F, J-K [DE 82-10].

exhibits are photographs of front lower thighs and knees – presumably Plaintiff's – and a photograph of Plaintiff lying on his left side on the ground purportedly at the time of the arrest at issue. *See* Exs. G-I [DE 82-10 at 11-13]. In that picture, Plaintiff is in fetal position with his arms behind his back and what appears to be blood on the right side of his face. [DE 82-10 at 13].

A court has discretion to enforce its local rules, even with regard to a *pro se* litigant. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (stating "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Review of the docket in this matter indicates all of Plaintiff's filings have been via mail, with the exception of the April 28, 2016 motion. Plaintiff provided no explanation for his failure to timely submit his motion for extension of time via mail. Also, the docket indicates Plaintiff's understanding of the applicable local and federal procedural rules. *See, e.g.*, [DE 67] (Plaintiff's November 18, 2015 letter to the court advising of his understanding of the 90-day deadline provided by Rule 26(a)(2) of the Federal Rules of Civil Procedure and the reason for failing to meet that deadline); [DE 65] (Plaintiff's motion for extension of time to respond to interrogatories); [DE 43] (Plaintiff's motion for extension of time to respond to motion to dismiss).

Given Plaintiff's filings indicate his awareness of and ability to follow the local and federal procedural rules and his failure to offer any explanation for failing to follow these rules as to the motion for extension of time, the court, in its discretion, declines to consider Plaintiff's response and exhibits attached thereto in ruling on the instant motion. That said, Plaintiff's

verified complaint,[11] which describes the allegedly unconstitutional conduct, is based on his own personal knowledge and sets forth facts admissible in evidence. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (stating "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge"); *Mills v. Ghee*, No. DKC 06-2313, 2012 U.S. Dist. LEXIS 56816, at *8-9 (D. Md. Apr. 23, 2012) ("In this circuit, [a] prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts.").

### III. STATEMENT OF FACTS

Based on the evidence before the court, the undisputed facts – stated in the light most favorable to Plaintiff – are as follows.[12]

On January 6, 2011 at approximately 7:23 p.m., Officer Gardner was dispatched to 704 Villa Circle, Sanford, North Carolina (the "residence") to investigate a breaking and entering committed by Plaintiff. Gardner Aff. ¶¶ 2-3; *see Mulder*, 233 N.C. App. at 85. Brenda Swann and her son, John Pridgen, who called the SPD, lived at the residence. Pridgen Aff. ¶ 2.

When Officer Gardner arrived at the residence, Pridgen advised, *inter alia*, that Plaintiff had struck Swann's car with a hammer and that Plaintiff drove a champagne-colored Mercury Sable. Pridgen Aff. ¶ 14; Gardner Aff. ¶ 8. After Officer Gardner radioed in this information, Officer Norton advised via radio that he was behind the Mercury Sable registered to Plaintiff.

---

[11] *See* 28 U.S.C. § 1746 (a party's signature "under penalty of perjury" and an execution date qualifies a pleading as "verified").

[12] *See Tolan v. Cotton*, __U.S.__, 134 S. Ct. 1861, 1863 (2014) (explaining in ruling on a motion for summary judgment, the court must set forth the facts in the light most favorable to the non-movant).

Norton Aff. ¶¶ 6-8; Gardner Aff. ¶¶ 11-12. As Plaintiff's car turned onto McGill Street, Officer Norton attempted a traffic stop of the car by activating his unmarked patrol car's blue lights and sirens. Norton Aff. ¶ 8. In response, Plaintiff drove his car into the yard at 102 McGill Street then drove over the curb back onto McGill Street. Norton Aff. ¶ 9. Officer Norton continued pursuing Plaintiff and radioed communications to notify officers in the area of the same. Norton Aff. ¶¶ 10-11.

Officer Norton then followed Plaintiff onto Hill Avenue, where Plaintiff stopped momentarily. At this point, Officer Beasley arrived on the scene.[13] As both officers proceeded to exit their cars, Plaintiff accelerated toward Horner Boulevard. Norton Aff. ¶ 13; Beasley Aff. ¶¶ 8-9. Officers Norton and Beasley resumed pursuit of Plaintiff and followed him onto Horner Boulevard, where they were joined by Officer Kidd. Norton Aff. ¶¶ 14-15; Beasley Aff. ¶ 10; Kidd Aff. ¶ 6. Plaintiff drove aggressively on Horner Boulevard, weaving in and out of traffic and swerving at other vehicles. Norton Aff. ¶ 16; Beasley Aff. ¶ 11; Kidd Aff. ¶ 7. While on Horner Boulevard, Officer Norton pulled his car next to Plaintiff's car in an attempt to box-in Plaintiff and force him to stop. Norton Aff. ¶ 18. However, Plaintiff swerved his vehicle at Officer Norton's car, forcing Officer Norton to "back[ ] off" in order to avoid a serious collision. Norton Aff. ¶ 18; Beasley Aff. ¶ 11.

Upon reaching the intersection of Horner Boulevard and U.S. 1 Northbound, Plaintiff turned left onto U.S. 1. Norton Aff. ¶ 19; Beasley Aff. ¶ 12. While pursuing Plaintiff on U.S. 1, Officers Norton, Beasley and Kidd reached speeds in excess of 100 miles per hour. Norton Aff. ¶ 19; Beasley Aff. ¶ 12; Kidd Aff. ¶ 9. As Plaintiff neared the Burns Drive exit, he feigned exiting U.S. 1 and then swerved back onto U.S. 1, where he almost collided with Officer

---

[13]  Officer Beasley notified officers of Plaintiff's location as the pursuit progressed. Beasley Aff. ¶ 10.

Norton's vehicle. Norton Aff. ¶ 22; Beasley Aff. ¶ 13; Kidd Aff. ¶ 10. Plaintiff ultimately exited onto the NC 421 Bypass, where Officers Norton, Beasley and Kidd again reached speeds in excess of 100 miles per hour in pursuing Plaintiff. Norton Aff. ¶ 23; Beasley Aff. ¶ 14; Kidd Aff. ¶ 12.

Plaintiff exited NC 421 Bypass via the Kelly Drive exit. Norton Aff. ¶ 25. As Plaintiff turned right onto Kelly Drive, he lost control of his car, collided with Officer Norton's car, then traveled into a ditch. Norton Aff. ¶¶ 26-27; Kidd ¶¶ 13-14. Officer Quick then parked his police car in front of Plaintiff's car, and as Officer Quick began exiting his car, Plaintiff drove into the passenger side thereof. Quick Aff. ¶ 6; Norton Aff. ¶¶ 27-28; Beasley Aff. ¶ 20; Kidd Aff. ¶ 16. Officer Norton then drove into Plaintiff's car, which came to a rest. Norton Aff. ¶ 29; Quick Aff. ¶ 8; Beasley ¶ 21; Kidd ¶ 17.

After exiting their cars, Officers Norton, Beasley and Kidd approached the driver side of Plaintiff's car, while Officer Quick approached the passenger side. Norton Aff. ¶ 30; Beasley ¶ 22; Kidd ¶ 19; Quick Aff. ¶ 9. As Officer Norton approached Plaintiff's car, he noticed blood on the right side of Plaintiff's face. Norton Aff. ¶ 30. When Officer Norton reached the driver side, he pointed his gun at Plaintiff and ordered him to turn off his car and show his hands. Norton Aff. ¶ 31. Plaintiff reached out the open window, yelled "Shoot me, motherfucker" and "slapped" Officer Norton's gun. Norton Aff. ¶ 32; Kidd ¶ 19. Officers Norton and Quick attempted to pull Plaintiff out of the car via the driver side and passenger side windows, respectively. At the same time, Plaintiff put his car in reverse and accelerated backwards while Officer Quick was hanging out the passenger side window. Quick Aff. ¶ 10, 13; Norton Aff. ¶¶ 33-34. Officer Quick was carried backward as the car reversed; however, he managed to grab the gear shift, push it into park and remove the car key. Quick Aff. ¶¶ 10, 13; Norton Aff. ¶ 34;

Beasley Aff. ¶ 22; Kidd Aff. ¶ 23; Aff. D.A. Henningsen ¶ 10.

Officers Quick and Beasley then removed Plaintiff from his car and placed him on his stomach after he refused their orders to get on the ground. Quick Aff. ¶ 15; Beasley Aff. ¶¶ 24-25; Kidd Aff. ¶¶ 26-29. When the officers ordered Plaintiff to place his hands behind his back, he refused, keeping his arms beneath his body and kicking at the officers. Kidd Aff. ¶ 29; Quick Aff. ¶ 16. While Plaintiff was "restrained by three other officers," Officers Norton, Kidd, Beasley and Quick "beat (hitting, kicking, and using blunt objects) [Plaintiff] to subdue [him]."[14] Compl. § 4 at 2. After Officer Kidd secured Plaintiff's legs, the other officers were able to handcuff Plaintiff. Norton Aff. ¶ 41; Beasley Aff. ¶ 26; Quick Aff. ¶¶ 17-18; Kidd Aff. ¶¶ 30-31; Henningsen Aff. ¶¶ 12-13. At one point, Plaintiff stated, "I hope ya'll [sic] motherfuckers die!" Norton Aff. ¶ 40.

EMS responded to the scene then transported Plaintiff to the hospital due to complaints of chest pain. Norton Aff. ¶ 44; Quick Aff. ¶ 20. At the hospital, Plaintiff was diagnosed with a facial contusion and released with a prescription for Naprosyn. [DE 74]. Upon release, Plaintiff was transported to the SPD for processing.[15] Norton Aff. ¶ 48; Kidd Aff. ¶ 32.

---

[14] Plaintiff states that Officer Norton "told [him] in a hateful and malice manner that [he] was no better than a 'mother fucker nigger.'" Compl. § 4 at 2. Taking this allegation as true for purposes of this motion, yelling and cursing do not amount to a constitutional violation. *See, e.g., Lamar v. Steele*, 698 F.2d 1286, 1287 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); *Keyes v. Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y 1984) (holding "the use of vile and abusive language, [including racial epithets,] no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim").

[15] J.E. Maynor, a highway patrol officer with the North Carolina Department of Public Safety, responded to the scene of the termination point of the pursuit of Plaintiff and authored the accident report. Maynor Aff. ¶¶ 3-4. Keith Rogers, a detective with the SPD, photographed and processed the termination point. Rogers Aff. ¶¶ 3-4 [DE 78-9].

## IV. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits and other proper discovery materials before the court demonstrates "there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining "irrelevant or unnecessary" factual disputes do not preclude summary judgment). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court may not make credibility determinations or engage in any weighing of the evidence. Rather, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

The movant has the initial burden of showing no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 324. The movant discharges his burden by identifying an absence of evidence to support the non-moving party's case. The non-moving party then must identify specific facts showing there is a genuine issue for trial. *Id.* at 323. In this regard, the non-moving party must convince the court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. To meet this burden, the non-movant may not rest on the pleadings, but must designate specific facts in the record – by providing depositions, affidavits, and other competent evidence – establishing a genuine issue of material fact exists. *Id.* at 325. Conclusory allegations, speculation, and unsubstantiated assertions do not

suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *see Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the nonmoving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). If the non-movant fails to meet his burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322. Even though the court construes a *pro se* litigant's filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "the special judicial solicitude with which a district court should view . . . pro se [filings] does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

## V. DISCUSSION

Plaintiff claims Defendants "exacted the act of police brutality on [him] after the apprehension and the extraction of [him] from [his] car by beating (hitting, kicking and using other blunt objects) to subdue [him]" while he was "already . . . being restrained by three other officers," and thus violated Plaintiff's constitutional rights under the Fourth Amendment. Compl. § 4 at 2 [DE 1]; *see Graham*, 490 U.S. at 386; *see also Purnell*, 652 F.3d at 531 ("The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of seizures effectuated by excessive force."); *accord Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005).

Defendants deny the alleged conduct complained of by Plaintiff gives rise to a Fourth Amendment violation. Nevertheless, argue Defendants, even if the court concludes the facts are sufficient to prevent summary judgment in their favor on the excessive force claim, they are entitled to qualified immunity.[16]

---

[16] "Qualified immunity is typically an immunity from suit, rather than a mere defense to liability, and is effectively lost if a case is permitted to go to trial." *Gregg v. Ham*, 678 F.3d 333, 339 (4th Cir. 2012). However, "if

42 U.S.C. § 1983 provides a civil remedy for constitutional deprivations by persons acting under color of law.[17] *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). However, individual defendants in § 1983 actions may be entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

In analyzing a qualified immunity defense, the court must determine: (1) whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a federal right; and (2) whether the right was "clearly established" when viewed in the specific context of the case.[18] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011); *accord Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 170 (4th Cir. 2010). While the plaintiff bears the burden of proof on the first inquiry, the defendant bears the burden of proving the constitutional violation was not "clearly established." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007). For the reasons that follow, the court finds Defendants' use of force was objectively reasonable as a matter of law – that is, the evidence establishes that there was no

---

a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Id.*

[17] Section 1983 is not a source of substantive rights. Instead, it provides a remedy to redress violations of federal law grounded in federal constitutional provisions or statutes. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To prevail on a claim under § 1983, a plaintiff must establish that (1) a person deprived him of a right secured by the Constitution or laws of the United States (2) while acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that they acted under the color of state law at the time of Plaintiff's arrest on January 6, 2011.

[18] A court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236.

violation of Plaintiff's Fourth Amendment rights.

Excessive force claims are properly analyzed under a Fourth Amendment reasonableness inquiry that considers the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The reasonableness of the force used to effect a particular seizure or arrest is determined by balancing "the nature and quality of the intrusion" on the individual's bodily integrity against "the countervailing governmental interests at stake." *Id.* at 396. That is, the force applied must be balanced against the need for that force.

1. *Nature and Quality of Intrusion*

The gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured with reference to the type and amount of force inflicted. Fourth Amendment jurisprudence recognizes that the "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. 396. Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier v. Katz*, 533 U.S. 194, 209 (2001).

The evidence does not indicate a significant Fourth Amendment intrusion. Taking Plaintiff's factual allegations as true, after Plaintiff was pulled from his vehicle, Defendants hit and kicked him and used "other blunt objects" to "subdue him" while he was "already . . . being restrained by three other officers."[19] However, Plaintiff does dispute Defendants' averments that Plaintiff actively struggled against and kicked at the officers as they attempted to handcuff him.

---

[19] Plaintiff's complaint is void of any allegations concerning his handcuffing. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (stating "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest"); *see also LaLonde v. Cty. of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000) ("Handcuffing an arrestee is standard practice, everywhere.").

Plaintiff claims that actions of Defendants caused him to "sustain[] major and massive injuries, bruises, swelling of face, my eye swollen shut, nose damaged, my lip busted and swollen, and my body was bruised and battered" and relies on four photographs attached to his complaint. *See* Compl. § 4 at 2; [DEs 1-1 to 1-4]. Assuming these photographs could be reduced to an admissible form at trial with appropriate authentication testimony, they provide no support for Plaintiff's contention that he sustained major and massive injuries or that his body was bruised and battered. Indeed, the only medical record submitted in this case is to the contrary, indicating a "facial contusion" only – a diagnosis consistent with Plaintiff's remaining injury allegations. *See Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (stating the "extent of the plaintiff's injury is [] a relevant consideration" in determining whether force was excessive and noting officers crushed plaintiff's nose and caused other injuries requiring multiple stitches).

That said, the court acknowledges a plaintiff may recover "nominal damages without proof of actual injury" for unreasonable intrusions on one's bodily integrity. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding nominal damages are available under 42 U.S.C. § 1983). It is undisputed that Plaintiff sustained a facial contusion and for purposes of this motion, the court must accept Plaintiff's contention that this injury was the result of Defendants' actions. Accordingly, the evidence establishes that although the Fourth Amendment intrusion was not significant, neither can it be considered minimal based on Plaintiff's version of events.

2.  *Governmental Interests at Stake*

The "governmental interests" include such non-exhaustive factors as the severity of plaintiff's crime, whether plaintiff posed an immediate threat to the safety of the officers or others, and whether the plaintiff actively resisted arrest or attempted to evade arrest by flight. *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir. 1998) (citing *Graham*, 490 U.S. at

396-97).

a.   Severity of the Offense

Plaintiff was found guilty of multiple traffic offenses. These offenses, while serious, may not necessarily be dangerous. However, fleeing in a vehicle at high speeds to avoid law enforcement, swerving at other vehicles and driving erratically as Plaintiff did here presented a dangerous situation. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014) (recognizing a high-speed chase can pose "grave public safety risk[s]"). Based on these facts, the court finds that the crimes at issue were relatively severe.

b.   Threat to Police Officers and Others

Defendants were faced with a suspect who was believed to have damaged his former girlfriend's vehicle with a hammer and who engaged at least six police cars in a high-speed chase. When Officer Norton first attempted to force Plaintiff to stop his vehicle, Plaintiff swerved his vehicle at Officer Norton's car. Later, when Officer Quick pulled in front of Plaintiff's car after it ended up in a ditch, Plaintiff's rammed his car into the patrol car. Plaintiff then not only ignored Officer Norton's commands to exit his car but also slapped at Officer Norton's gun. When officers attempted to remove Plaintiff from his car, he reversed his car and accelerated backwards while other officers were approaching from the rear of the car. Given Plaintiff's erratic and dangerous behavior throughout the high-speed chase, it was not unreasonable for the officers to believe that Plaintiff was dangerous and a threat to their safety and to the safety of the public.

c.   Resisting Arrest

The evidence indicates that after Plaintiff refused to exit his car and was ultimately placed on his stomach, he continued to kick at and fight against the officers' attempts to handcuff

*Mulder v. Norton, et al.*
No. 5:13-CV-574-F
Page 17

him. *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 904 (4th Cir. 2016) (stating an individual actively resists arrests when he refuses to exit his car despite instructions to do so and "and stiffen[s] [his] body and clutche[s] [the] steering wheel to frustrate the officers' efforts" in removing him from the car) (quoting *Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011)). Plaintiff proffers no evidence disputing Defendant's factual averments that Plaintiff continued to resist arrest until he was finally handcuffed.

3.   *Weighing the conflicting interests*

Taking into consideration the totality of the circumstances surrounding Plaintiff's arrest, no reasonable jury could find that Defendants' actions were objectively unreasonable. Plaintiff's actions – driving at high speeds, swerving at cars, attempting to get his car moving again to resume his flight, slapping at a loaded gun – are serious actions and would have led a reasonable officer to infer at the time that Plaintiff would not succumb to apprehension peacefully and was willing to put officers and the public in danger in order to avoid arrest. When an individual is believed to be a threat based on objective evidence, or when a suspect is violently resisting, courts have found that officers who punched or kicked the individual in order to restrain him did not engage in excessive force. *See, e.g., Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) ("One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force."); *Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010) (delivering closed-fist blows to plaintiff's back and applying a taser after he resisted arrest following high speed car chase was objectively reasonable); *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1355 (11th Cir. 2015) ("striking, kicking, and tasing the resisting and presumably dangerous suspect in order to arrest him were not unreasonable uses of force" against suspect who had led officers on high speed chase and struck an officer with his

vehicle).

Plaintiff proffered no evidence disputing his actions during the high-speed chase, his refusal to obey Defendants' orders to exit the vehicle, to lie on the ground and to place his hands behind his back or Defendants' claim that five officers were needed to place him in handcuffs. Given the evidence establishes an absence of genuine disputes of material fact as to whether Defendants' actions constituted excessive force, the court will grant Defendants' motion for summary judgment as to both the excessive force and civil conspiracy claims.[20]

## VI. CONCLUSION

For the reasons provided herein, Defendants' Motion for Summary Judgment [DE 76] is ALLOWED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 24th day of June, 2016.

*/s/ James C. Fox*
_____
JAMES C. FOX
Senior United States District Judge

---

[20] To establish a civil conspiracy under § 1983, Plaintiff "must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right" – here, violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).